Good morning, your honors. I may appease the court. Jenny Toma for Appellant Trey Campbell. I'm sorry? Can you talk a little louder or turn your microphone up? Thank you. So sorry. To date, at least 36 federal appellate judges in three circuits agree that the Note 1 commentary to Guideline 4B1.2b is inconsistent with the text and accordingly deserves no deference. This court should follow the well-reasoned decisions of the D.C. Circuit and the En Blanc 3rd and 6th Circuits for several related reasons. First, as those decisions make clear, that's the construction that the text can bear. 4B1.2b clearly and completely defines a controlled substance offense by telling us in no uncertain terms what that phrase means. It doesn't say importantly what it includes or what it involves. It says means. And so because it means what it says, there simply is no textual hook in 4B1.2b for the commentary to gain any foothold. And when the text of the guideline is clear, as it is here, any expansion of that meaning can't be given any deference. That was the case for the D.C. Circuit in Winstead and for the En Blanc 6th in Havis. And as the 3rd Circuit's decision in Nasir makes clear, which was cited in our 28J letter, the intervening Supreme Court precedent in Kaiser v. Wilkie cut back on the traditional understanding of deference and makes clear that this is without a doubt the result that is required. Well, the 2nd and 11th Circuits went the other way, right? And do you say that this is because that they are wrong and would go about differently in view of the, I think, the Supreme Court case postdated them. Is that correct? Kaiser v. Wilkie came out in June 2019. I don't know the specific dates. I believe TAB postdated it for sure. I'm less certain about the 11th Circuit. But I do know what TAB says is that they are relying on their prior precedent. And they say in TAB that even if Mr. TAB were correct, the prior precedent, they see no difference between the authority to promulgate the commentary and to put that information in the commentary, which is, as I understand it, akin to what this court held in Kennedy in 1994. They see no difference between having the authority to do that and, you know, whether or not that deserves deference. And of course, we disagree. We think that those are obviously two very distinct legal questions. And for that reason, this court's decision in Kennedy doesn't answer the question that's presented here. In fact, it wasn't even, you know, a thought at that point. We were simply asking under 994 whether the commission had the authority to put a definition in the commentary, which of course it did. But that doesn't answer the question here is whether that deserves deference. And our position is it does not plainly. I think the 2nd and 11th Circuit relied on the word prohibits, which is an argument that your colleague on the other side does here. Is that not correct? It does. And that really doesn't, you know, as we say in the briefs, that really doesn't help the government much because it states the obvious. It simply says that, you know, tells us what we already know, that something that prohibits just, you know, forbids that conduct. And that really is especially unhelpful in Lange for the 11th Circuit because there, they were assuming in Lange that the commentary was valid. And we, of course, are challenging that here. And we don't think that's true at all. So there are some clear distinctions between those. We also know, secondly, that the commission knows how to properly include, you know, inquiry offenses like attempts in a definition when that's what it's trying to do properly. And we need no further than just to scroll up in 4B1.2a where the crime of violence is defined in the text as one that in relevant part involves the attempted use of force. So it's very, very clear at this point that the commission knows how to do this correctly when that's what it means to do. And of course it didn't here. Lastly, this approach avoids serious separations of powers concerns, which, you know, are foremost in all of those decisions. The fact that they don't, by putting these in the commentary, they don't receive notice and comment and they don't necessarily receive congressional review and approval. That's just something that none of these, the DC circuit, the en banc third circuit and the en banc sixth circuit, you know, again, 36 federal appellate judges have been unwilling to rubber stamp and this court should not either. As a consequence of all of this, 4B1.2, a controlled substance offense under that guideline does not include attempts. And although the government raises a lot of issues in its brief, one thing I believe it does not dispute is that the least culpable conduct that's criminalized by West Virginia delivery is an attempted transfer, which comes directly from 60A4101H. I don't think the government disputes that and I don't think it could. And so where the text of the guideline, you know, and the compared as a categorical categorically to the state predicate at issue, you know, there's just not a categorical match here. And we think that this, this result is required. The court has no further questions on this point. I simply would briefly talk about the explanation of the sentence issue in terms of the explanation for Mr. Campbell's sentence. We think there was a great deal, you know, I think it's pretty, pretty plain that there was a great deal of arguments raised in favor of a lower sentence. Mr. Campbell specifically requested a 63 month sentence at the low end of the non-career offender range that he argued applied for many reasons at great length. And of course there, I don't think there's any dispute about that. We do not think that of course several... Didn't the district court depart downward here? It did. It did. Just not enough for us to... Go ahead. I'm not sure I would necessarily say not enough, but what I think makes the most sense is to say, to look at, you know, what the argument was for. For example, the career offender range was 210 to 240. Let's say low end 210. The non-career offender range was 63 to 78. So low end 63. And that's what Mr. Campbell asked for. You know, even if we could somehow say, well, the downward, you know, variance was indicative that the district court maybe accepted some arguments and rejected some. I mean, it clearly accepted and heard and took into account that some of the arguments for downward departure. Even if the district court were partly persuaded and split the difference, that would be 136. And here we've got 180, which frankly is incredibly difficult to figure out how the court got there exactly. And if the court had explained, you know, which of those arguments it rejected and why, I think perhaps we wouldn't be here on this issue. But, you know, the court is obligated. It's not just enough. The bar would be quite low if the court's only obligation was simply to read and consider the arguments. What this court's precedent requires is an individualized explanation. And when the defendant argues for a specific sentence, as Mr. Campbell did here, an individualized explanation is required for those arguments that are rejected. And we just don't think that this record explains well enough for appellate review what occurred here and why. Of course, if we agree with you on your first argument, we vacate the sentence, right? Sure. Absolutely. And in fact, Mr. Campbell would have no objection to this case, this appeal being resolved on that ground alone. That's perfectly fine. If your honors have no further questions, I'd like to reserve the remainder of my time to rebuttal. Thank you. Mr. Hillman. Yes. Thank you, your honors. My name is Tim Hillman. May it please the court, I represent the United States of America. I'm an assistant United States attorney from the Northern District of West Virginia. If this court adopts the defendant's arguments, not only will it invalidate several cases of prior precedent here in the Fourth Circuit, but even more importantly, it will mean that the career offender enhancement will no longer have any relevance in this circuit. As no state or federal drug conviction will ever again qualify as a predicate offense. Well, first of all, with respect to prior precedent, this case is post Kaiser and that alters our deference that we give the commentary, correct? Yes, your honor. That is correct. However, when I point to prior precedent, you know, I've cited five different cases in my brief. And if the court adopts a defendant's argument, the outcomes of all five of those cases, you know, would have the effect of, you know, being undone. Not if they're all distinguishable. But that is correct. Yes, your honor. The defendant in this case argues that aiding and abetting attempt and conspiracy are not controlled substance offenses within the meeting and the guidelines. However, the commentary application notes of guideline 4B1.2B clearly states that they are that aiding and abetting conspiracy and attempt are controlled substance offenses and therefore count as career offender predicates. So I just want to be sure you and I are on common ground here. You would agree that the commentary cannot add offenses or broaden offenses that are statutory. Isn't that correct? I'm sorry. I didn't understand the question. The commentary cannot broaden the scope of the guideline. Yes, your honor. Yes. Yes, your honor. I would agree. What the commentary says if the guideline doesn't permit it. That's correct. Absolutely. And I would argue in this case that the commentary note at issue here interprets and explains. It doesn't broaden. It doesn't add anything that wasn't already there to begin with, but rather it interprets and explains. And that was settled and determined as being permissible by the Supreme Court in the 1993 case of Stinson versus United States. Yes, but Kaiser is much more recent, and it tells us that the deference that we give to the commentary is much more limited. Limited, yes, but it's the same principle enunciated in Stinson is still applicable. And that's that the test that that the commentary is authoritative and controlling unless it violates the Constitution or a federal statute, or if it's inconsistent with the guidelines, or if it constitutes a plainly erroneous reading of the guidelines. And in this case, the commentary note at issue does not run afoul of any of those three, and it simply serves to interpret and explain. You know, a case that I think strongly supports the government's position in this case is the Fourth Circuit case, a 2018 case of United States versus Allen. In Allen, the court addressed the same question, is commentary application note one of 4B1.2b of the guidelines authoritative and controlling? And the Allen court said yes. It specifically said, we hold the inclusion of section 84 or 843b and application note one as a controlled substance offense when the underlying offense also is a controlled substance offense, is authoritative and controlling. Now, yes, the Allen court dealt with this question within the context of an 843b conviction. That is whether using a communication facility and committing, causing, or facilitating a drug offense counted under the definition of controlled substance offense. This court in Allen held that it does, and relying on Stinson, stated that the function by describing one way in which a controlled substance offense may be committed, namely by using a communication facility. There was no argument in Allen that the the commentary was contrary to the guidelines one, and Allen did resolve the attempt question, and it didn't post a Kaiser. So, I don't think it resolves, I don't think it does what you would like it to do. Well, I think the key to the analysis is consistency, and you know, as I've been arguing, it has to be consistent with Supreme Court law above all, and I don't think it has to take into effect what the Supreme Court has told us in Kaiser. Yes, but Kaiser, I do not believe, overruled Stinson. It pretty much limited it. It limited it, but to situations, situations are still permissible where a guideline explains and interprets, and that's my argument here, is that the commentary note in this case explains and interprets. It doesn't create anything. Only if we find the guideline ambiguous after we exhaust all the traditional rules of construction. That's what Kaiser said. Getting back to Allen, one of the things that I would like to point out is if, and I do believe the Allen court found that commentary note to be consistent. That was, I think, a takeaway from that, is that the commentary note at issue is consistent, and so, you know, my argument... The government never, nobody argued it was inconsistent. I don't know that there was a finding that it was consistent. And it was another part of the guidelines, anyway. I respectfully disagree. I do believe the Allen court did make a finding that it was consistent, and I would quote from the Allen opinion. It says, this particular provision serves an explanatory function by describing one way in which a controlled substance offense may be committed, namely by using a communication facility. This language is not inconsistent with the guideline, and it goes on to cite the guideline. So, you know, I do believe the Allen court, you know, did make that finding about consistency, and so then my argument is, well, if it's... My point was that Allen, I'm sorry, Allen didn't argue it was inconsistent because we're talking about another section of the guidelines, and so there wasn't, it really isn't relevant here, but go ahead. Okay, but thank you, Your Honor, and again, but it brings me back around to the issue of consistency, and, you know, one of my main arguments is that, well, if using a telephone communication facility to commit a drug crime is consistent, how much more consistent is a aiding and abetting attempt or conspiracy? Other arguments in favor of consistency, I think it's already been mentioned about the word prohibit, and that to focus on the word prohibit is used in the guidelines themselves. Guideline 4B, 1.2B states that a controlled substance offense means an offense under federal or state law punishable by a term of imprisonment exceeding one year that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance or the possession with intent to do the same. An offense that prohibits, I would argue that that means an offense prohibiting drug crimes, and aiding and abetting, conspiracy, and attempt are simply means of committing those crimes that are already enunciated in the guideline. Another point that I'd like to make... Can you go back to what, so Judge Motz was asking you about Kaiser. Why is Kaiser not instructive here? Well, I think it is, but it's... In my view, Kaiser doesn't change the fact that the guideline commentary is authoritative and controlling when it's consistent with the guideline itself, when the guideline can bear the construction. And in this case, I would argue that the commentary note is consistent with the guideline, that the guideline can bear the construction, that aiding and abetting, attempt, and conspiracy are included as other means of committing the prohibited conduct. By way of example, if we look at the federal drug statute 28 U.S.C. 802, 8 and 11, that define the say the actual constructive or attempted transfer of a controlled substance. So the federal drug statute defines distribute with the word attempt. So if that's the case, how could the guideline be inconsistent with that? How could attempt... Or how could the guideline not bear the construction of attempt being included? Mr. Hellman, aren't you somewhat undermining Kaiser? Because you're saying it can bear that... You're really talking about it can bear that addition as not being inconsistent. But Kaiser says, no, you don't get there until you look very carefully at the structure, the history, and the purpose, and you don't need any aid if that's clear. What you're saying is, no, no, no, no. We can add something as long as the addition seems to be consistent. But that's what Kaiser is saying. It's a different... There's a different view of it. You have to look at it. Why do we need... You can avoid all of these problems if we just simply do what Congress said. It's only when Congress... What Congress has said is not clear and needs help. But the statute and the text needs no help. We don't need aid by addition. So this is more addition rather than clarification, isn't it? No, Your Honor. I disagree. I don't think that this is addition. I think this is an explanation and an interpretation of what the guideline already says. It would be one thing if it was adding in a completely different offense. But these are, as I've been saying, simply different means of committing the exact same prohibited conduct. Other arguments in favor of consistency is that the text of the guideline itself doesn't expressly exclude these crimes. And this is an argument that was embraced by some of the courts that agree with the government's position in this matter. U.S. v. Piper in the First Circuit looked at the fact that the guideline doesn't exclude these crimes and said, therefore, we're not going to exclude it. It can't be inconsistent. Also, the Seventh Circuit, which just very recently doubled down on its acceptance of the government's position, I think just in March of this year, in U.S. v. Rauch, it also embraced the argument that there's no inconsistency because the guideline itself does not expressly exclude attempt, conspiracy, and aiding and abetting. Congress clearly knew what in-court crimes were that relate to drugs, correct? Yes, well, you know, presumably. I won't tell them you said that. Certainly they did because there are many drug conspiracy crimes that existed here before the Seventh Circuit did. But Congress chose not to. And what happened to the rule of lenity? I mean, I know it's an archaic term now, almost, but I think some of it still exists. You know, you don't have the final way to shoo on something that's not there. Congress decided they're not there. Well, Your Honor, it's difficult for me to say what Congress knew or didn't know. I mean, I can tell you aiding and abetting, which I would argue aiding and abetting is not even an in-co-aid offense because it requires a completed act. But those three offenses actually were in the commentary notes going all the way back to 1987. So, you know, I think there's a good chance for whatever reason, you know, perhaps the sentencing commission maybe didn't get it amended in time or who knows what the reasons are, but they clearly wanted everyone to understand that these offenses, aiding and abetting, attempt, conspiracy, were meant to be included as part of the definition. What do you mean they understood it? I'm sorry? Clearly understand it. What makes you say that? I think because of the simple inclusion of the commentary note itself. But the only power that the commission has is the power that Congress has given them. They don't have power to make new laws. Congress makes the laws, right? Yes, Your Honor, that's correct. But I think there are in the cases that have rejected your position, there have been real questions about separation of powers. If we would go your way, we would be allowing the commission to make a new law. That's not its role. Yes, Your Honor. And I do appreciate the concern about separation of powers. To that end, for one, the guidelines are not mandatory. So I think there's some protection there. But the other thing that I would argue is that the Stinson test provides a level of protection there. I agree completely. The commission does not have freestanding power to create new law, to add things that are not already there, but they are permitted to explain and interpret what they meant. Well, why don't you apply? I don't understand why you always go back to Stinson. Why don't you look at what Kaiser says, that we look to the traditional rules of construction and we only give the commentary deference if we find that the guidelines are ambiguous after we exhaust all the traditional rules of construction. What is ambiguous about the guideline here? Well, I think the simple fact that there's a circuit split shows that... It's ambiguous? Look at the guideline and tell me what language in the guideline is ambiguous. Well, the term distribute is defined one way under the federal drug statute. And now defense counsel is seeking this court to find that that's inconsistent with the guideline itself. This guideline, look at this guideline and what's ambiguous in it? Well, your honors, as I've been arguing, I would argue that the only ambiguity is for those that do not see or do not necessarily agree with the commentary note that serves to interpret and explain what the sentencing commission intended when it drafted this. So the guidelines ambiguous because only if you don't give the commentary... Wait, if you don't follow the commentary, is that it? Is that your argument? My argument is that the simple fact that we're here today shows that there's some ambiguity under the guideline as far as... No, it doesn't. Your argument has to be that there is ambiguity. And that's what I'm trying to... I'm not trying to trick you. I'm just trying to figure out what is the ambiguity with respect to this guideline? The ambiguity is that there are those that are unsure as to whether it includes a conspiracy, aiding and abetting an attempt. And why are they unsure? What language in the guideline makes them think that this is included? Well, I think like in the Havis and Winstead opinions, for example, they look to a very strict and narrow reading of the definition that's listed in the guideline without giving any deference to the commission or recognizing that the commentary substance offense, which is also consistent with the federal drug statute as well. I don't think I've been very clear. As I understand Supreme Court law, and you don't have to buy into this, but just for purposes of my answering my question, we have to find that the guideline is ambiguous. So what I'm asking you is not what other things are, but what portion of the guideline is ambiguous? Well, I don't mean to keep repeating what I've been saying over and over. Just tell me the portion of the guideline. You don't have to tell me the portion of anything else. Just the guideline. I would say the portion of 4B, 1.2B, that speaks of an offense that prohibits the manufacture, import, export, distribution, or dispensing. That's ambiguous. There's, I think, some level of ambiguity there. Yes, Your Honor. So is, and I certainly appreciate the give and take on that. I've got about a minute and 30 left here. Unless there's any other questions on that, I would like to get to the sentencing arguments that were addressed a moment ago. Are there any other questions before I move on? So the government's argument is that the district court did not commit plain error at sentencing by not directly or explicitly addressing all of the defendant's arguments because it clearly gave a meaningful consideration of all the defendant's arguments and provided an individualized assessment at sentencing. And this is most evident from the fact that the court varied downward in its sentence. Further, the court stated that it had thoroughly reviewed the defendant's sentencing memorandum, even, I think, using the term that it was quite a bit of homework. And then the court went on the record and provided an individualized explanation for its sentence. This court's case of United States versus Blue states that for a sentence to be procedurally reasonable, the district court must provide an individualized assessment of the arguments presented and impose an appropriate sentence. First of all, as we said, as I've already argued, the court imposed a 180-month variant sentence. But can I add to our Fourth Circuit precedent? I'm sorry? May I add to our precedent? I know Blue very well, but also all non-frivolous mitigating evidence should be considered and the record should show that. And here, it didn't. It just plainly didn't. It didn't even speak to those matters, several of them. It's not there. It's just not there. Yes, Your Honor. I think my argument on this point, though, is what is there is that the district court gave an individualized assessment. And again, the fact that the court considered and even accepted some of the defendant's arguments is reflected in the fact that a 180-month variant sentence was imposed. That's the only thing you can rely on this. You have to assume because it was a low guideline sentence. That means the court must have considered all the non-frivolous mitigating evidence. Well, the court did go on the record and stated several reasons in support of its sentence. The court pointed to the fact that defendant had three prior supervised release revocations. Non-frivolous mitigating evidence. Yes, the court did a great job of laying out all the negatives. I'm talking about non-frivolous mitigating evidence. Yes, Your Honor. And I appreciate your point. One thing I would get back to, though, is I do think that it's correct that it's not there. To the extent I have to agree with you on the record, Your Honor, your point is well taken. But what I would point to, and again, another thing I want to try to argue is the issue of invited error in this case. At the end of the sentencing hearing, both counsel were given an opportunity to raise any issue. The court stated, and I recall I was there at sentencing, the court stated, gentlemen, is there anything else or words to that effect? And at that point, defense counsel didn't say, judge, hey, you didn't address this. Or judge, could you give us some more explanation on this issue? Rather, defense counsel said, what's the effect of no, Your Honor? We just note our objections for all appellate purposes. Well, counsel can't do the court's job. All thing counsel do is give evidence. He says anything further. No, I've given you all the non-frivolous mitigating evidence. So that's all I can do. The rest is required under blue without prejudice for the court. But if the defendant wants some additional explanation as to why his arguments were rejected, wouldn't that be a good opportunity for him to ask the court for that? And if he had not been silent on that issue, the court could have given him the explanation that he now seeks. It may be, but that's not the law in the Fifth Circuit that is cued by the fact you didn't require more. Well, I'm hoping perhaps the court might see it that way today. Oh, I see. Yes, Your Honor. At this point, I'm about three minutes over time, it seems. If there's no other questions, I would rest on my brief. Thank you. Thank you, Mr. Hellman. Mr. Thoma, you have some time reserved. You're muted. Thank you, Your Honor. I think that this court has done a fantastic job of distinguishing Allen. Okay, you're not muted anymore, but I still can't hear you. We'll get there. Thank you for the court's indulgence. I think that this court has done a fantastic job of distinguishing Allen, but I just would like to say a few words on that subject, which is that Allen, first of all, it did specifically address a different part of the commentary, sure. Also, with respect to attempt, unlike 843B, attempt does not include all the elements of the completed offense. It's easily distinguished on that basis. You must have a very low voice, which is lovely. I'm sorry. Ramble at the end. Attempt, unlike 843, I'll talk a little bit slower. I think that might help. Yes, thank you. Unlike 843B, attempt does not include all the elements of the completed offense, so it's very easily distinguishable on that basis as well, and on a third basis, which of course is Kaiser. At the time of Allen, we were all operating under the assumption that the commentary could permissibly explain, and this is a quote from Allen, even unambiguous guidelines. That was the understanding at the time, and of course, the Supreme Court recognized in Kaiser that its guidance in previous cases had been perhaps a little bit conflicting, a little bit unclear, or differing from case to case. They clarified that before this court gets into any consistency analysis, before it can ask whether the commentary is consistent with the text of guideline, it must make a step one finding that the text is ambiguous first, before it can move to step two. That's just a step that this court has never taken because it was never previously required. We think that that's very easily distinguishable. I also want to briefly address the rule of lenity, which Judge Gregory raised there. Here at 177, Judge Bevis, also in his concurrence, emphasizes that it's one thing to say that we should defer, particularly with respect to an agency's interpretation, but in a civil case, that's a different issue. When we're dealing with, as we are here, a criminal case that concerns the loss of liberty, there's no instance in which the more than it does here. I would just agree with that point and add that. I also want to add that the government's point about 802.8 and 802.11, that's not novel. That's not something new. That's just being raised to this court for the first time. This has always been the government's argument, and the D.C. Circuit expressly rejected that in Winstead at that point. The text of 4B.1.2 says exactly what it means. That does not mean that we should then go looking off to other statutes once and twice removed even from 841. We're not asking, how does Congress define federal distribution? We're asking, how does the guideline define the generic offense? Those are different questions, and one does not answer the other. Lastly, I think that this panel isn't bound by any prior precedent for the reasons that we stated, and I don't think that that's changed, but if this court has any further questions on that point, I'd be happy to answer those. Well, we're not bound because they're distinguishable or because they were pre-the Supreme Court case, but why don't you think we're bound? I think for both of those reasons. I think, first of all, that they're all distinguishable. I don't think any of this court's cases cited by the government would necessarily be overturned. We've already discussed Allen. Walton, of course, the same rationale applies. When it comes to Kennedy, of course, whether, again, that dealt with an 846 conspiracy, and as this court, it's the same concept. Kennedy didn't stop this court from ruling as it did in Norman, of course, and the same principle applies here. These are different questions, and whether under 994A there was broad authority for the commission to simply set a sentence or to recommend what the sentence should be is an entirely separate question that doesn't answer the one being raised here. I don't think this court is bound either from the merits of these or the questions of these decisions. More importantly, because of Kaiser, it's the law in many circuits, including this one, that when intervening Supreme Court president adopts a different standard from the one that this court has previously applied, in those circumstances, those prior decisions aren't binding on the panel. This court reaffirmed that as recently as Winston in 2017. It requires a fresh review under the current legal landscape or makes it appropriate, so for those reasons. Thank you very much. All right. Thank you so much. I thank both of you for a very fine analytical discourse on these very important legal issues. That really helps the court a great deal, and I want you to know how much we appreciate it. We can't put a final seal on that appreciation with a handshake, but certainly know that with a virtual recognition that we appreciate it so much, and we wish you well and be safe. And with that, I will ask the clerk to adjourn the court. Dishonorable court stands adjourned until this afternoon. God save the United States and dishonorable court.
judges: Roger L. Gregory, Diana Gribbon Motz, Stephanie D. Thacker